UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DENNIS MINTUN,

               Plaintiff,

    v.

CORIZON MEDICAL SERVICES; P.A.
KAREN BARRETT; N.P. JANE SEYS;
and RONA SIEGERT,[1]

               Defendants.

Case No. 1:16-cv-00367-DCN

**MEMORANDUM DECISION AND
ORDER**

## I. INTRODUCTION

Pending before the Court is Defendant Rona Siegert's Motion for Summary

Judgment (Dkt. 39) and Defendants Corizon Medical Services, P.A. Karen Barrett, and

N.P. Jane Seys (collectively "Corizon Defendants") Motion for Summary Judgment (Dkt.

40). Also pending is Plaintiff Dennis Mintun's Renewed Motion for Appointment of

Counsel. Dkt. 43.

The Motions are fully briefed and ripe for the Court's review. Having fully

reviewed the record herein, the Court finds the parties have adequately presented the facts

---

[1] Originally, Mintun named 27 defendants in this lawsuit. As part of an Initial Review Order,
Judge Winmill dismissed the majority of those defendants. *See* Dkt. 9. Additionally, this Court
substituted Defendant Jane Seys for the misidentified "Janet Seyes" in Mintun's original
Complaint. *See* Dkt. 28. For clarity, the case caption only includes those defendants still
remaining in the case.

and legal arguments in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the Motions without oral argument. For the reasons set forth below, the Court GRANTS both Summary Judgment Motions and DENIES Mintun's Motion for Appointment of Counsel.

## II. BACKGROUND

### A. Factual Background

Plaintiff Dennis Mintun is an inmate incarcerated by the Idaho Department of Corrections ("IDOC") at the Idaho State Correctional Institution ("ISCI") in Kuna, Idaho.

Corizon Medical Services is a private corporation under contract to provide medical and mental health care to inmates at IDOC facilities.

Karen Barrett and Jane Seys are mental health care providers employed by Corizon. Barrett is a Physician Assistant and Seys is a Registered Nurse. Dkt 40-2.

Rona Siegert is IDOC's Health Services Director at ISCI and oversees Corizon's provision of medical services to prisoners at IDOC facilities. Dkt. 39-5.

On February 28, 2011, Mintun visited P.A. Barrett and complained about "becoming forgetful" and "being uncomfortable around people he does not know," while also reporting that he was "happy and fine" around people he does know. Dkt 40-2. According to Mintun, these feelings had only surfaced within the previous two weeks. *Id*. Barrett undertook an evaluation of Mintun and noted that he had previously reported stress, anxiety, fear of other inmates, difficulties sleeping, and concerns that he might have PTSD. *Id.* Mintun was participating in counseling with IDOC clinicians and IDOC

employees who are Licensed Professional Counselors that assist inmates in developing coping strategies for dealing with the stresses of prison. *Id.* Mintun had also been prescribed anti-depressants, but for some reason had stopped taking them. *Id.*

Barrett also noted that Mintun had previously made complaints regarding his unit placement at ISCI, and that he reported that his mental health symptoms had improved significantly after being moved to a unit that he preferred. *Id.* Upon review of his file, Barrett directed Mintun to see a medical health care provider to rule out a physiological basis for his memory loss, to continue seeing clinicians for counselling, and to return in three months. *Id.* Mintun continued to receive counseling as directed. *Id.*

On March 9, 2011, in one of his counseling sessions, Mintun expressed, apparently for the first time, a concern that he thought he might be "mildly autistic." *Id.* In an attempt to alleviate Mintun's concerns, the clinician gave Mintun a pamphlet on Asperger's Syndrome. *Id.* Mintun later told a counselor that he was "born with Asperger's Syndrome," and claimed that his mother had confirmed as much in a telephone conversation. *Id.*

Mintun next saw Barrett on November 19, 2011, because he had been "reading up on" Asperger's Syndrome and wanted Barrett to diagnose him. *Id.* After evaluating Mintun and his symptoms, Barrett concluded that he did not meet the diagnostic criteria for Asperger's Syndrome and that his symptoms were entirely consistent with the stress and anxiety associated with the correctional context. *Id.* In particular, Barrett noted that Plaintiff was pleasant, had a normal affect, made good eye contact, and did not report

other symptoms associated with Asperger's Syndrome. *Id.* She also noted that clinicians regularly reported Plaintiff as being pleasant and having a normal affect. *Id.*

Finally, Barrett determined that there was no need for an independent evaluation of Mintun and that the treatment he was receiving, including counselling, was appropriate in light of Plaintiff's refusal to continue taking medications. *Id.*

In subsequent visits with clinicians, Mintun stated that he was "doing well" and "ha[d] no concerns," but continued to state that he wanted to be tested for Asperger's Syndrome. *Id.* He also continued to complain about his placement in the correctional institution. *Id.*

On February 13, 2012, Mintun filed the first of three grievances requesting that Siegert review Barrett's determination that an outside medical evaluation was unnecessary. Upon review, Siegert deferred to Barrett's professional opinion and recommended that Mintun continue working with clinicians.

On August 27, 2012, Mintun filed a second grievance again requesting that an outside psychologist examine him to verify whether he had Asperger's Syndrome. Siegert determined that she had already addressed this issue in Mintun's previous appeal and noted that absent new information her position would not change.

Mintun had his first visit with N.P. Seys on August 7, 2014, after complaining that he was "stressed, tense, and irritable." *Id.* Mintun expressed to Seys his idea that he might have Asperger's Syndrome. *Id.* Like Barrett, upon review, Seys determined that Plaintiff did not meet the diagnostic criteria for Asperger's Syndrome, and that an independent

evaluation was unnecessary. *Id.* Seys did not observe any signs or symptoms of Asperger's Syndrome or Autism, and Mintun did not report any such symptoms. *Id.*

Seys determined that Mintun's symptoms were consistent with the stresses of the correctional context, and offered to prescribe medications. *Id.* Mintun refused. *Id.* In light of that refusal, Seys urged him to continue seeing clinicians for counseling, which Mintun did. *Id.*

On September 2, 2014, Mintun filed his third grievance with Siegert again requesting that "proper testing" be performed to verify his Asperger's Syndrome. Siegert again reviewed Mintun's file, and again deferred to medical professionals who determined that Mintun did not meet the criteria for Asperger's Syndrome or Autism. Siegert encouraged Mintun to continue working with professionals to reduce the stresses of prison life, and dismissed the appeal.

Mintun's second and last visit with Seys occurred on April 21, 2016, when he asked her to address an error he had noticed on his medical chart. *Id.* A note on the chart incorrectly stated that Mintun had a history of poly-substance abuse. *Id.* After resolving that issue, Mintun asked some follow-up questions about high-functioning Autism, which Seys answered. *Id.* During the visit Seys did not observe any signs or symptoms of Asperger's Syndrome or Autism. *Id.* Seys maintained that Mintun did not meet the diagnostic criteria for Asperger's Syndrome or Autism Spectrum Disorder and that an independent evaluation of Plaintiff was unnecessary. Seys encouraged Mintun to continue seeing clinicians for counseling. *Id.*

**B. Procedural Background**

Plaintiff filed a pro se Complaint on August 16, 2016, asserting a wide variety of claims against twenty-seven defendants. Dkt. 2. In an Initial Review Order dated November 29, 2016, Judge Winmill, then presiding over this case, dismissed many of those claims. Dkt. 9.

As against the Corizon Defendants, Judge Winmill determined that certain mental health treatment claims could proceed past the pleading stage, including claims under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment through deliberate indifference to a serious medical need and state law claims for medical malpractice. *Id.* Judge Winmill allowed the state law claims to proceed to the extent Mintun had timely complied with the Idaho Tort Claims Act and pre-litigation screening requirements. *Id.*

As against Defendant Siegert, Judge Winmill allowed Mintun to proceed on his Eighth Amendment claim for deliberate indifference pursuant to 42 U.S.C. § 1983 on the allegation that Siegert was aware of a need for further testing regarding Mintun's alleged Asperger's Syndrome and disregarded that need, as well as Mintun's state law claims of medical malpractice and negligence.[2] *Id.* As part of that Decision, Judge Winmill also determined that Mintun was not entitled to an attorney. Dkt. 9, 37-38. This case was then transferred to the undersigned as part of a general reassignment of cases. Dkt. 26.

---

[2] It is important to note that Seigert is not a medical professional; therefore, although grouped together by Judge Winmill, it appears that the medical malpractice claims only apply to the Corizon Defendants while the negligence claims apply to both Corizon Defendants and Seigert.

# III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

# IV. ANALYSIS

Mintun bases his claims against all Defendants on the same general allegations and facts. Pursuant to Judge Winmill's Initial Review Order, these claims fall into two

categories. First are the Eighth Amendment claims under 42 U.S.C. § 1983 for deliberate indifference to medical needs; second, the state law claims for negligence and medical malpractice. The Court will address each in turn as to each Defendant.

## A. 42 U.S.C. § 1983

To succeed on a claim against *an individual* "under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To succeed on a claim against *a government entity* under § 1983 (also called a *Monell* claim), a plaintiff must allege "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997)). If Mintun fails to state a valid Eighth Amendment claim, he also fails to state a *Monell* claim because the first element of the *Monell* claim will not be satisfied.

Mintun asserts that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Initially, the Supreme Court only applied the Eighth Amendment to claims of "inhuman techniques of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Supreme Court subsequently "held that the Amendment proscribes more than physically barbarous punishments." *Id.* Now, "[t]he Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and

decency . . . ,' against which we must evaluate penal measures." *Id.* (internal citation omitted). Accordingly, "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society'" violate the Eighth Amendment. *Id.* (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

Under these standards, the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103. The standard for these types of claims is "deliberate indifference." *Id.* In other words, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* (internal citation omitted). Examples of actionable Eighth Amendment medical claims include a prison doctor's indifference to a prisoner's medical needs or a prison guard's intentional interference with prescribed treatment. *Id.* at 104–05. An accident or mere negligence, however, cannot form the basis of a medical-based Eighth Amendment claim. *Id.*

An actionable Eighth Amendment claim for inadequate medical care meets two elements. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). First, the plaintiff must allege "the existence of a serious medical need." *Id.* An objective standard applies to this element. *Id.* "Such a need exists if failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Id.* (quoting *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006)). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain.'" *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). It is important to note that the "routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society" does not constitute a serious medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Second, the plaintiff must allege that a prison official was "deliberately indifferent." *Id.* A subjective standard applies to this element. *Id.* "A prison official is deliberately indifferent" under this standard "only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In the context of mental health care, courts have recognized that it is particularly difficult to establish deliberate indifference to a serious need for numerous reasons. "First, there is considerable room for disagreement and debate among psychiatrists and other mental health professionals as to what is a serious mental illness for which the denial of adequate treatment causes constitutionally cognizable pain." *Capps v. Atiyeh,* 559 F. Supp. 894, 917 (D. Or. 1982). For instance, mere anxiety may not be a serious medical need, as opposed to a part of the "routine discomfort" that is an inevitable consequence of the penalty of imprisonment. *See, e.g., Long v. Nix*, 877 F. Supp. 1358,1366 (S.D. Iowa 1995), *aff'd*, 86 F.3d 761 (8th Cir. 1996). Second, "[t]he diagnosis

of mental illnesses is made tougher still because it is easy for inmates tired of their boring, restrictive and even harsh routines to feign the symptoms of mental illness to effect a change in their environment." *Id.* (internal quotation marks omitted). Third, "psychiatrists themselves differ on the underlying theories and thus on the methods of treatment." *Id.* "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* (internal quotation marks omitted) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 314 (1982)).

### 1. Corizon Defendants

As just noted, determining whether a mental health care situation is a serious medical need—as required—is extremely difficult. Although Asperger's or Autism may be considered serious in some circumstances, Mintun has not pointed to any facts or evidence which establishes that this medical need was serious *for him*. Failure to establish this first element is fatal to Mintun's claims, but even assuming arguendo that his condition was a serious medical need, he cannot establish that the Corizon Defendants were deliberately indifferent to that need.

Here, Mintun received adequate mental health treatment that was far from deliberately indifferent to his needs from Corizon via Barrett and Seys. He met with each of these two mental health care professions twice and got the same results each time. It may not have been what he wanted to hear, but Courts have long held that a disagreement between a prisoner and prison medical personnel does not render their care inadequate, much less give rise to a claim of deliberate indifference to a serious medical need. *See*

*Franklin v. State of Or., State Welfare Div.,* 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim."); *Tucker v. Daszko*, No. 2:17-CV-1798 KJN P, 2017 WL 4340090, at *3 (E.D. Cal. Sept. 29, 2017) (holding that plaintiff's disagreement with treatment providers does not suggest deliberate indifference).

Although Mintun believed that he had Asperger's Syndrome or something along the Autism Spectrum, upon evaluation, two professionals did not feel such was the case. Barrett and Seys are both well-trained and qualified individuals who have the expertise to diagnose and treat a wide variety of mental conditions, including Asperger's Syndrome, Autism, PTSD, anxiety, stress, difficulties sleeping, and depression. Dkt 40-2. In the course of their experience as mental health care providers, they have frequently diagnosed and treated such conditions, including in the correctional context. *Id.* To opine that their evaluation and diagnosis were incorrect would be simply that: an opinion. This opinion however cannot be the basis of a valid Eight Amendment claim.[3]

In both cases, Barrett and Seys exercised their best reasoned judgment in light of the evidence available to them to determine that Mintun did not satisfy the diagnostic

---

[3] This is particularly important in light of the fact that there is no direct care for Asperger's or Autism, *i.e.*, no miracle medication. Dkt. 40-2. Normally, all mental health care professionals can do is treat the underlying symptoms. *Id.* The counselling Mintun was already receiving for his stress, anxiety, depression, and nervousness around inmates, such as working with clinicians to learn coping and management strategies, is common treatment for Asperger's Syndrome and Autism. *Id.* Therefore, even if Barrett or Seys had diagnosed Mintun with Asperger's or Autism, there is no indication that his treatment would have been any different from what he was already receiving.

criteria for any condition, that his reported symptoms were consistent with the stressors of prison life, and that a diagnosis of Asperger's Syndrome or Autism Spectrum Disorder would not alter his treatment. Mintun also received regular counseling from Licensed Professional Counselors employed by IDOC who endeavored to teach him skills to manage the stress, anxiety, and fear of other inmates that he reported. *See Rimer v. Sandoval*, No. 213CV1440JCMGWF, 2016 WL 659713, at *3 (D. Nev. Feb. 18, 2016), aff'd, 692 F. App'x 905 (9th Cir. 2017) (finding no deliberate indifference to complaints of stress and anxiety where mental health care staff "offered plaintiff alternative coping mechanisms").

Additionally, Mintun is not entitled to a second, or outside, opinion because he disagreed with Barrett and Seys. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution."); *Williams v. Borg,* 108 F.3d 1387 (9th Cir. 1997) (unpublished) ("Decisions regarding [plaintiff]'s diagnosis, method of treatment, and whether and when he should see a specialist are medical decisions that do not represent cruel and unusual punishment."); *Rojo v. FBOP*, No.109CV01152AWISMSPC, 2010 WL 55640, at *2 (E.D. Cal. Jan. 6, 2010) ("Plaintiff does not have an entitlement under the Constitution to a second opinion or to treatment by an outside doctor."); *Williams v. Ralston,* No. CV 14-4522-UA JEM, 2014 WL 3926990, at *6 (C.D. Cal. Aug. 12, 2014) (finding refusal to refer inmate to outside provider for tests was classic example of difference of opinion that does not give rise to deliberate indifference claim).

"A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin,* 974 F.2d at 1060. "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this claim. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (internal quotation marks, alterations, and citations omitted).

Here none of these characteristics are present. The evidence shows that the Corizon Defendants adequately addressed Mintun's needs and that they were not deliberately indifferent to Mintun's medical needs. Therefore, Mintun does not have an actionable Eight Amendment claim. Because Mintun does not have an Eight Amendment claim, he cannot state a *Monell* claim. Accordingly, summary judgment is appropriate on Mintun's 42 U.S.C. § 1983 claims against the Corizon Defendants.

## 2. Siegert

As to Mintun's deliberate indifference claims against Defendant Siegert, the same analysis applies however on a much more limited scale.

Broadly speaking, Mintun alleges that Siegert was deliberately indifferent to his medical needs because she took no action upon receipt of his three grievance notices. As Health Services Director, Siegert oversees Corizon's provision of medical services to prisoners at IDOC facilities. Dkt. 39-5. One of her duties is to investigate any medical-related issues or complaints received through concern forms and grievances. *Id.* When

she receives such a concern form or grievance, she researches the issue presented in the grievance independently. *Id.*

As explained in her affidavit, when Defendant Siegert reviews an inmate's medical records as part of a grievance appeal, she looks for information that supports the inmate's claims or reveals a medical issue that needs further intervention. *Id.* If she does not find that information in the medical record, she will refer the inmate back to the treating medical provider. *Id.* When the issue involves an inmate's disagreement with the treatment he is receiving and there is no indication from the record that the treatment is inadequate based upon the inmate's medical needs, she will also refer the inmate back to the treatment provider. *Id.* Defendant Siegert cannot overrule a provider's diagnoses or treatment recommendations. *Id.* Finally, pursuant to IDOC policy, concern forms or grievances for appellate review that have been filed on the same issue will be rejected, even if the concern form or grievance appeal has been written in such a manner that it appears to be a new issue. *Id.*

As a threshold matter, the Court notes that there is a question regarding whether the statute of limitations has run on the claims Mintun asserts against Siegert.

A prisoner alleging constitutional violations under 42 U.S.C. § 1983 must comply with the applicable state statute of limitations regarding personal injury. *See e.g., Wilson v. Garcia*, 471 U.S. 261, 278 (1985). Idaho Code § 5-219(4) establishes that all actions to recover damages for personal injury must be filed within two years from the date the cause of action accrues. The statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury. Idaho Code§ 5-219(4); *Action Apt.*

*Ass'n v. Santa Monica Rent Control Opinion Bd.*, 509 F.3d 1020, 1026-1027 (9th Cir. 2007) (citing *De Anza Properties X Ltd. v. Cty. of Santa Cruz*, 936 F .2d 1084, 1086 (9th Cir. 1991)). In other words, the statute of limitations begins to run "when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (internal quotation marks omitted).

Here, Mintun filed his Complaint on August 16, 2016. Thus only Mintun's third grievance, filed with Siegert on September 2, 2014, will be considered by the Court as any grievances filed before August 16, 2014, are barred by the statute of limitations.[4]

Under the standards already outlined in the previous section, Mintun similarly cannot establish that Siegert was deliberately indifferent to his medical needs. When Mintun appealed Seys's decision to not allow an outside medical professional to test him for Asperger's Syndrome or Autism, Siegert undertook an investigation of his medical history and determined that Barrett and Seys had made a sound determination. Siegert found nothing in Mintun's records which suggested he needed further testing on this issue. Siegert's role is not to overrule medical diagnosis, but to determine if the care given was adequate. Under the circumstances, Siegert determined that the care Mintun received was indeed adequate and that the lack of an Asperger's or Autism spectrum diagnosis from two professionals did not necessitate an outside opinion. Siegert further

---

[4] Thus the Court will not discuss Mintun's Feb 3, 2012, or August 27, 2012, grievances.

recommended that Mintun continue developing coping mechanisms and then dismissed the grievance.

Finally, insofar as Mintun is arguing a respondeat superior theory, the Court notes that there is no respondeat superior liability under 42 U.S.C. § 1983, and that a supervisor is only liable for the constitutional violations of his or her subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984). Here, Mintun has not pointed to anything that constitutes a constitutional violation nor anything that indicates Siegert was a willful participant in any alleged violations. Siegert relied on the medical records and treatment of two trained professionals. She simply upheld what they recommended.

Neither the Corizon Defendants, nor Siegert violated Mintun's Eight Amendment Rights. The record does not establish any deliberate indifference. Mintun's bare allegations and uncorroborated opinions are insufficient to establish a valid Eight Amendment claim. Summary judgment is therefore appropriate as to these claims.

## B. Medical Malpractice and Negligence

Mintun's second set of claims are Idaho state law claims of medical malpractice and negligence. As previously noted, Siegert is not a medical practitioner; therefore, it appears the medical malpractice claims apply only to the Corizon Defendants.

"In a negligence action the plaintiff must establish the following elements: '(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct

and the resulting injuries; and (4) actual loss or damage.'" *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quoting *Hansen v. City of Pocatello*, 184 P.3d 206, 208 (Idaho 2008)).

To succeed on a medical malpractice claim, the plaintiff must "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence" that the defendant medical provider "negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided." Idaho Code § 6-1012.

A plaintiff asserting a medical malpractice claim must first submit the claim to a prelitigation screening panel in accordance with Idaho Code section 6-1001. Further, state law claims against government employees may not be maintained unless the plaintiff has complied with the Idaho Tort Claims Act ("ITCA"), set forth in Idaho Code sections 6-901 through 6-929. The ITCA provides,

> All claims against a political .. . [subdivision] arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

*Id.* § 6-906. A "claim" under the ITCA is "any written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee." *Id.* § 6-902(7). The ITCA further provides that "[n]o claim or action shall be allowed against a governmental entity or its

employee unless the claim has been presented and filed within the time limits prescribed by this act." *Id.* § 6-908.

## 1. Corizon Defendants

The Court first addresses Mintun's medical malpractice claims. Mintun has failed to establish that he has complied with two Idaho statutes relevant to medical malpractice claims.

First, the requirement under Idaho law that all medical malpractice claims be submitted to a prelitigation screening panel is "compulsory as a condition precedent to litigation." *Id.* § 6-1001. Here we have no indication that Mintun complied with this mandatory requirement.

Second, a plaintiff must demonstrate what the applicable community standard of care is and how the defendant has failed to meet that standard. *Id.* § 6-1012. Expert testimony is the mechanism by which a plaintiff presents this evidence. *Id.*

Mintun has not designated an expert to provide the necessary evidence in this case to support a medical malpractice claim. Idaho Code section 6-1013 lays out the basic foundational elements for the admissibility of the expert testimony required by Idaho Code section 6-1012: (1) the opinion must be held by the expert, (2) testified to with reasonable medical certainty, and (3) and based on professional knowledge and expertise coupled with actual knowledge of the applicable community standard to which his or her expert opinion testimony is addressed.

Summary judgment is appropriate when a plaintiff has not designated any expert. See *Storm v. Corr. Med. Servs.*, No. 1:10-CV-00319-BLW, 2013 WL 5274219, at *12

(D. Idaho Sept. 18, 2013) (dismissing section 1983 claims on summary judgment for failure to provide expert testimony as required by Idaho Code section 6-1012).

In response to these arguments, Mintun simply says that as a ward of the state with limited funds, this expert testimony cannot be required of him, or in the alternative, that "means should be provided for Plaintiff to be able to obtain such expert testimony." Dkt. 42, ¶ 8. While inmates are entitled to access the courts, they are not entitled to the resources necessary to "litigate effectively" once in court. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). This Court has held that pro se inmates are not excused from the obligation to provide the expert testimony required by Idaho law in support of a claim for medical malpractice, nor will the court undertake to do this on the inmate's behalf. *Storm,* 2013 WL 5274219, at *13.

Because Mintun has not complied with the prelitigation screening requirement or retained an expert as required by Idaho law, summary judgment is appropriate.

In regards to Mintun's negligence claims against the Corizon Defendants, the Court reincorporates the prior analysis regarding deliberate indifference that outlines that Mintun received adequate treatment from Corizon via Barrett and Seys. Mintun's bare allegations, with nothing more, are insufficient to establish negligence.

While it is true that Barrett and Seys owed Mintun a duty of care, Mintun has failed to establish that there was any breach of that duty. Here, these medical professionals—both trained in recognizing and diagnosing the disorders at issue— exercised their best judgment in light of the evidence before them. Based upon their evaluations, observations, and professional medical opinions, Mintun did not meet the

criteria for either Asperger's Syndrome or Autism Spectrum Disorder. Furthermore, both providers found that an independent evaluation was not necessary. Barrett and Seys were not negligent when, after evaluating Mintun, they determined in their professional opinion that a certain diagnosis was not applicable. Accordingly, summary Judgment is appropriate on this claim.

### 2. Siegert

As noted above, Idaho law mandates that Mintun take certain procedural steps in order to effectuate a valid tort claim. Failure to do any number of these requirements is fatal to any such claim. In this case, Mintun did not take the appropriate procedural steps and summary judgment is therefore appropriate.

The ITCA requires a plaintiff to file all tort claims against a government entity or employee with the Secretary of State within 180 days from "the date the claim arose or reasonably should have been discovered." Idaho Code § 6-905.

Mintun never addresses whether he filed the requisite claim in this particular case. From the record it appears that Mintun has filed four tort claims in the last 6 years with the Secretary of State; one in 2012, 2013, 2014, and 2015. Dkt. 39-3. The first three relate to matters not connected to this lawsuit. The 2015 filing does appear to list "deliberate indifference" as a cause, however Mintun never references Siegert in that document.

More importantly, even were the Court to construe the 2015 Notice as meeting the requirements under the ITCA, it was filed on December 3, 2015. The last known interaction (at least that would give rise to a claim) that Mintun had with Siegert was on

September 2, 2014, when he filed his third grievance. Even if this September 2, 2014, incident is what Mintun was referring to in his December 3, 2015, claim, he did not file that claim within the required 180 days. Although other reasons exist for denying this claim, the Court does not reach those reasons as this claim is time-barred. Summary judgment is therefore appropriate.

## C. Motion to Appoint Counsel

As part of his Complaint, Mintun requested that the Court appoint counsel to represent him. As noted in Judge Winmill's Initial Review Order, unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

The Court also reminded Mintun that:

> a federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one. Therefore, it is often difficult to find attorneys willing to work on a case without payment, especially in prisoner cases, where contact with the client is especially difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if at all possible.

Dkt. 9, at 38. It appears that Mintun did not try (or was unsuccessfully if he did try) to retain counsel on his own. Nevertheless, he petitions the Court a second time to appoint counsel for him. The Court again finds that Mintun is not entitled to an appointment of

counsel. Moreover, there are numerous legal and statutory reasons why none of Mintun's claims can survive summary judgment. Having an attorney would not have changed that. The Court therefore DENIES Mintun's Renewed Motion for Appointment of Counsel.

## V. ORDER

1.  Rona Siegert's Motion for Summary Judgment (Dkt. 39) is GRANTED.

2.  The Corizon Defendants' Motion for Summary Judgment (Dkt. 40) is GRANTED.

3.  Mintun's Renewed Motion for Appointment of Counsel (Dkt. 43) is DENIED.

4.  The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: February 22, 2018

David C. Nye
U.S. District Court Judge